# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DETENTION WATCH NETWORK
and CENTER FOR CONSTITUTIONAL
RIGHTS,

                        *Plaintiffs*,

      v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT AGENCY,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

                       *Defendants*.
-------------------------------------------------------------X

**DECLARATION OF BOB LIBAL**

      I, BOB LIBAL, declare pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

      1.      I am the Executive Director of Grassroots Leadership, a thirty-four year-old organization based in the Southern United States focused on exposing injustice within detention and prison facilities and ending the privatization of public resources, especially within the context of the criminal justice and immigration systems. Grassroots Leadership is an organizational member of Detention Watch Network ("DWN"), one of the Plaintiffs in the above-captioned matter. I make this statement in support of Plaintiffs' Motion for a Preliminary Injunction.

      2.      Grassroots Leadership works in both the criminal justice and immigration arenas and is involved in advocating for reduced reliance on immigration detention and increased

exposure of the private prison industry's role in detention and deportation policies. We primarily serve and advocate for individuals and communities at risk of detention, deportation and incarceration, and carry out our campaigns by utilizing a mixture of grassroots organizing and advocacy along with in-depth research and reporting. We visit people being held in detention centers as well as their family members and community leaders so that the voices of those directly impacted can shape our organizational priorities. Our goal is to hold the government accountable by exposing the unacceptable conditions within these privately-run prisons.

3. We have offices in both North Carolina and Texas, but advocate on behalf of communities across the country.

4. In my capacity as Executive Director, I oversee all aspects of our current advocacy campaigns, as well as assist in authoring reports and publicly advocate on behalf of Grassroots Leadership. Stopping the expansion of private immigration detention centers is a central focus of our organizational campaigns, reports and media strategy, as it is of critical importance to not only the communities we serve but the general public as well.

5. Grassroots Leadership has published or co-published several recent reports regarding the inadequate conditions and human rights violations in detention facilities operated by private prison corporations. These include "The Dirty Thirty: Nothing to Celebrate About 30 Years of Corrections Corporation of America" (June 2013), "The Top 10 Reasons the Polk Detention Center Should Still be Closed" (December 2013), and "Operation Streamline: Costs and Consequences" (September 2012). Our website blog is regularly updated with information and reports concerning our campaigns against private detention centers, and the connection with mandatory immigration policies such as the Detention Bed Quota.

6. The Detention Bed Quota is directly connected to these privately-contracted detention facilities, because having a mandated number of beds to fill helps these corporations stay in business and continue to earn profits at taxpayers' expense. Gaining more information about the connections between ICE, DHS and the private prison industry, how those contracts are crafted and why they continue is of vital importance to those we serve.

7. Grassroots Leadership is currently engaged in pushing forward a campaign to close the privately-run Polk County Detention Center in Texas. Gaining access to information sought in Plaintiffs' November 25, 2013 Freedom of Information Act (FOIA) request is critical to our ability to shed light on these continuing abusive policies and on human and civil rights violations affecting people being held at these prisons. For example, Plaintiffs' FOIA Request seeks information concerning the agreements between private prison corporations and ICE & DHS as well as records of communications regarding bidding proposals from these corporations to ICE See Exhibit A at (C)(a)(i), (C)(b)), and (C)(i)). Such information would illuminate the harms caused by the Detention Bed Quota and the lack of oversight of sub-standard detention facilities. It is therefore crucial to our efforts to inform and galvanize the public to take action in local jurisdictions where these facilities are located and to advocate for Congressional representatives to end the Detention Bed Quota.

8. For those people who continue to be detained, often indefinitely and in horrific conditions, as well as for their family members, the ability of Grassroots Leadership to access information on the Detention Bed Quota is of the upmost importance. It is incredibly difficult to advocate against the detention of people in sub-standard facilities such as the Polk County Detention Center when a government quota mandates that these facilities be filled at all times.

9. Because Congressional debates on the DHS appropriations budget for Fiscal Year 2015 are about to begin, decisions regarding where and how ICE spends its money on detention and contracting are imminent. The reasons behind ICE's decision to interpret Congressional funding as a government-quota of 34,000 filled detention beds remain unclear. Grassroots Leadership needs this background information now so that we can be better informed when meeting and advocating with local and national government officials.

10. In addition, communities directly affected by the Detention Bed Quota need the information sought in this FOIA request immediately so that Grassroots Leadership and others can fully understand private-prison contracting trends and in particular how ICE is making decisions regarding the opening and closing of these facilities. Immigrants detained by ICE were removed from the privately-run Jack Harwell Detention Center in Waco, Texas in 2011 after complaints from immigrant rights advocates and legal service providers about inadequate conditions, only to be considered for re-opening two years later without any transparency or justification. Situations such as these raise important questions as to whether the Detention Bed Quota is being used only to further the profit margins of corporations. This is not only a question of government expenditure but one of human rights. The communities served by Grassroots Leadership do not deserve to have family members placed in detention facilities simply to fill an artificial quota.

11. Therefore it is critical that the public and our political representatives, especially in states targeted as potential sites for new private prisons, be able to understand how the rising profits of these private-sector prison companies are directly connected to this government-mandated quota policy. This must happen immediately, as decisions concerning private prison re-openings and potential expansion in Texas are imminent. Without the immediate release of

this information Grassroots Leadership's ability to hold private prison companies along with ICE and DHS accountable for unjust mandatory detention policies is seriously impeded.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 10, 2014

*Bob Libal*

_____
Bob Libal, Grassroots Leadership