UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DETENTION WATCH NETWORK and
CENTER FOR CONSTITUTIONAL RIGHTS,                14 Civ. 583 (LGS)

                    Plaintiffs,

          v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT and UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY,

                    Defendants.

**DECLARATION OF FERNANDO PINEIRO IN SUPPORT OF UNITED STATES
IMMIGRATION AND CUSTOMS ENFORCEMENT'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

## I. INTRODUCTION

1.      I am the Deputy Freedom of Information Act ("FOIA") Officer at the U.S. Immigration

and Customs Enforcement ("ICE") FOIA Office ("ICE FOIA Office").  I have held this position

since December 29, 2013.  Prior to this position I was the FOIA Officer for three years at the

U.S. Department of Homeland Security ("DHS") Office for Civil Rights and Civil Liberties.

2.      The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C.

§ 552, and Privacy Act, 5 U.S.C. § 552a, requests received by ICE.

3.      As the Deputy FOIA Officer my official duties and responsibilities include the general

management, oversight, and supervision of the ICE FOIA Office.  I manage and supervise a staff

that process FOIA requests received by ICE.  In connection with my official duties and

responsibilities I am familiar with ICE's procedures for responding to requests for information

pursuant to the FOIA, including the FOIA request that the Center for Constitutional Rights and the Detention Watch Network (collectively "Plaintiffs") submitted to the ICE FOIA Office that is subject of this litigation.

4.      I make this declaration in support of ICE's Cross-Motion for Partial Summary Judgment in the above-captioned action.  The statements I make in this declaration are based on my personal knowledge, which includes knowledge acquired through, agency files reviewed, and information provided to me by other ICE employees in the course of my official duties.  The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5.      This declaration provides a description of ICE's processing of Plaintiffs' FOIA request. In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), and subsequent case law, this declaration provides a description of the portions of the documents redacted by ICE at issue in this motion.[1]

## II. RECEIPT OF PLAINTIFFS' REQUEST AND PROCESSING OF RESPONSIVE RECORDS

6.      Plaintiffs submitted their original FOIA request on November 25, 2013, seeking certain records including contracts or agreements related to ICE detention facilities.  A copy of the Request is attached as an exhibit to the complaint filed in this action.

7.      The ICE FOIA Office assigned Plaintiffs' FOIA request case tracking number 2014FOIA3585 and acknowledged receipt of the request by letter dated November 27, 2013.

8.      On January 30, 2014, Plaintiff filed a complaint in this matter.

---

[1] As indicated by the Parties' Joint Pre-Motion Letter to the Court dated October 30, 2015 [Docket No. 66], Plaintiff is only challenging certain redactions in the documents listed in the Vaughn Index, namely, redactions made pursuant to FOIA Exemption 4, 5 U.S.C. § 552 (b)(4), of unit prices (bed-day rates), including those that vary with detainee population (sometimes referred to as "tiered pricing") and staffing plans.  As explained below, ICE is now also asserting FOIA Exemption 7(E), 5 U.S.C. § 552 (b)(7)(E), with respect to the staffing plans.

9.      On July 3, 2014 the Court entered an order setting a schedule for ICE's production of responsive documents.

10.     Since July 15, 2014, the ICE FOIA Office has been releasing responsive documents to Plaintiffs in accordance with the Court's order.

11.     The ICE FOIA Office provided submitter notices to the private contractors in accordance with Executive Order 12600 and U.S. Department of Homeland Security (DHS) FOIA regulations found at 6 C.F.R. § 5.8 to inform them that Plaintiffs' FOIA request sought business information that they had provided to ICE.   Private contractors were notified and provided submitter notice responses on the following dates: (1) Akal Security Inc. ("Akal"), Asset Protection & Security Services LP ("Asset"), and Valley Metro-Barbosa Group JV ("Valley-Metro") were notified on March 30, 2015, and provided their submitter notice responses on April 14, 2015, April 10, 2015, and April 8, 2015, respectively; (2) Immigration Centers of America ("ICA") was notified on June 11, 2015, and provided its submitter notice response on June 22, 2015; (3)  Corrections Corporation of America ("CCA") was notified on both September 1, 2015 and October 6, 2015, and provided its submitter notice responses on September 4, 2015 and October 15, 2015; and (4) the GEO Group, Inc. ("GEO") was notified on October 6, 2015, and provided its submitter notice response on October 9, 2015.

### III. ICE OFFICE OF ACQUISITION MANAGEMENT AND ENFORCEMENT AND REMOVAL OPERATIONS

12.     The  ICE  Office  of  Acquisition  Management  ("OAQ")  delivers  quality  acquisition solutions in support of the ICE and DHS missions.

13.     The OAQ includes the Office of Component Acquisition Executive ("CAE"), which provides acquisition management oversight and support to ICE acquisition programs, and Detention  Compliance  and  Removals  ("DCR"),  which  provides  acquisition  support  to  ICE

Headquarters and Field Offices, and to the ICE Office of Enforcement and Removal Operations ("ERO") in the planning, awarding, and administering contracts for law enforcement and compliance requirements.

14.     ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States.  ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls.  ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

## IV. THE *VAUGHN* INDEX

15.     On November 9, 2015, ICE provided a *Vaughn* index to Plaintiffs.  The Vaughn Index included six (6) sample contract documents selected by the parties, which are representative of the contracts/agreements that ICE enters into with private contractors for detention services.[2] Pursuant to the parties' agreement, the index only described redactions on those documents with respect to certain pricing and staffing information pursuant to FOIA Exemption 4, specifically bed-day rates and staffing plans.

---

[2] **Contract No. 1** (ICE 2014FOIA03585.003209 through ICE 2014FOIA03585.003215) is a document from the contract between ICE and GEO for detention services at the Broward Transitional Center in Pompano Beach, Florida; **Contract No. 2** (ICE 2014FOIA03585.015538 through ICE 2014FOIA03585.015540) is a document from the contract between ICE and the Town of Farmville, Virginia, for detention services at the Farmville Detention Center, which is operated by ICA, a private contractor; **Contract Nos. 3 and 4** (ICE 2014FOIA03585.006215 through ICE 2014FOIA03585.006219 and  ICE 2014FOIA03585.00642 through ICE 2014FOIA03585.00650) are documents from the contract between ICE and CCA for detention services at the Otay Detention Facility in San Diego, California; **Contract No. 5** (ICE 2014FOIA03585.018716 through ICE 2014FOIA03585.018722) is a document from the contract between ICE and Valley Metro for detention services at the U.S. Department of Homeland Security's Buffalo Federal Detention Facility in Batavia, New York; and **Contract No. 6** (ICE 2014FOIA03585.017352 through ICE 2014FOIA03585.017354) is a document from the contract between ICE and Asset Protection for detention services at the ICE Florence Detention Center in Phoenix, Arizona.

16.     A bed-day rate is an all-inclusive cost paid by the government to a commercial contractor for providing detention services at a detention facility, expressed on a per-detainee, per-day basis.  The bed-day rate reflects the contractor's daily operating cost for the facility, including personnel, food, health care, supplies, utilities, maintenance, infrastructure depreciation, cost of capital, overhead, and profit.  It is the primary unit of comparison used by ICE to compare costs among contractors.

17.     A staffing plan is a document, which is usually part of a contract for detention services, that illustrates how many personnel are used at a detention facility where ICE detainees are held, how many personnel are on duty at any given time, and how and where personnel are posted inside the detention facility.

18.     The first row of the revised *Vaughn* Index contains five heading titles which briefly describe the type of information found in the corresponding columns below the heading titles, which read, from the left side of the page: "Contract No.," "Bates Number," "Document Title," "Withholding Full/Partial," and "Document Description and Applicable Exemptions."  Below the heading titles are six (6) horizontal rows which address the Exemptions that ICE FOIA claimed with respect to each of the sample contract documents.

19.     Attached to this declaration is a revised *Vaughn* index that also claims FOIA Exemption 7(E) with respect to portions of one of the sample contract documents, Contract No. 4, which contains a staffing plan for a detention facility.  Also attached is a re-processed version of that contract document reflecting the application of Exemption 7(E).[3]

---

[3] In the revised *Vaughn* index, ICE asserts for the first time in this litigation FOIA Exemption 7(E) with respect to the staffing plan attached to Contract No. 4.

## V. DESCRIPTION OF FREEDOM OF INFORMATION ACT WITHHOLDINGS
### FOIA Exemption 4

20.     ICE has withheld from the sample contracts information protected by FOIA Exemption 4,

5 U.S.C. § 552(b)(4).  FOIA Exemption 4 protects trade secrets and information that is:

(1) commercial or financial; (2) obtained from a person; (3) and privileged or confidential.

Commercial or financial information is deemed to be confidential if it would: (1) harm the

government's ability to obtain the necessary information in the future; or (2) cause a substantial

harm to the competitive position of the person from whom the information was obtained.

21.     ICE applied FOIA Exemption 4 to protect the following information in the sample

contracts from disclosure: (1) bed-day rates and similar pricing information, as well as certain

other amounts charged under the contracts, to the extent the total number of available beds is

disclosed and would allow for the individual bed-day rate to be derived based on that

information;[4] and (2) staffing plans, indicating the hourly wages for the particular employee

positions filled by the contractors.

22.     Upon review of information submitted by the private companies and ICE's Office of

Acquisition, the details of which are contained in separate declarations, ICE FOIA determined

that bed-day rates and staffing plan information if released, could allow a competitor to gain an

unfair advantage over another competitor when negotiating future contracts for detention

services with ICE, by underbidding a current contractor's proposal.

---

[4]  When processing the sample contracts, ICE FOIA redacted other information that, if disclosed, could be used to
calculate the bed-day rate such as quantity of beds or services.  However, while processing one of the sample
contracts the ICE FOIA Office inadvertently omitted redacting some information that could be used to calculate a
bed-day rate.  *See* Contract No. 5 at ICE 2014FOIA03585.018717.  A reprocessed version of this page is attached
hereto.  I understand that the Government has requested that Plaintiffs return the incompletely redacted contract
containing ICE's inadvertent omissions, and that the Court's ECF system substitute the correctly redacted contract
for the incompletely redacted contract.

**FOIA Exemption 7 Threshold**

23.     FOIA Exemption 7, 5 U.S.C. § 552(b)(7), establishes a threshold requirement that, to

withhold information on the basis of any of its subparts, the records or information must be

compiled for law enforcement purposes.

24.     The staffing plans for which FOIA Exemption 7 has been asserted in the instant matter

satisfy this threshold requirement.  Pursuant to the Immigration and Nationality Act, the

Secretary of Homeland Security is charged with the administration and enforcement of laws

relating to the immigration and naturalization of aliens, subject to certain exceptions.  *See* 8

U.S.C. § 1103.  ICE is the largest investigative arm of DHS and the second largest investigative

agency in the federal government.  Created in 2003 through a merger of the investigative and

interior enforcement elements of the U.S. Customs Service and the Immigration and

Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and

48 foreign countries, and is responsible for enforcing the nation's immigration laws, and

identifying and eliminating vulnerabilities within the nation's borders.

25.     The ICE ERO directorate oversees programs and conducts operations to identify and

apprehend removable aliens, to detain these individuals when necessary, and to remove illegal

aliens from the United States.  Within ICE, ERO has broad authority and prioritizes the

apprehension, arrest, and removal of convicted criminals, those who pose a threat to national

security, fugitives, recent border entrants, and aliens who thwart immigration control.  ERO

manages all logistical aspects of the removal process, including domestic transportation,

detention, alternatives to detention programs, bond management, and supervised release.  ERO

comprises seven headquarters divisions and 24 Field Offices, and more than 7,600 employees.

26.     The staffing plans at issue in this case were submitted by the private contractors and collected by ICE because they relate to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be illegally present in the United States, including records of interviews, arrest, booking, detention, removal, other related investigations, etc.

27.     More specifically, these staffing plans are compiled for law enforcement purposes, as the information is collected and used by ICE to assist the agency in its mission of arresting and detaining certain aliens, including those who pose a risk to public safety, and ensuring that detained aliens do not escape from ICE custody to facilitate their appearance at or during immigration enforcement proceedings.  Staffing plan information is compiled by ICE to determine the specific amount and allocation of personnel needed at a detention facility holding ICE detainees to ensure compliance with ERO's law enforcement mandate.  This information is critical to ensuring the operation and security of the detention facility, as well as the security of the personnel and detainees inside the detention facility.  Therefore, all the staffing plans for facilities holding ICE detainees were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

**FOIA Exemption 7(E)**

28.     FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), protects from disclosure records complied for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Release of the staffing plans at issue would disclose techniques and/or procedures for law enforcement investigations or prosecutions.

29.      ICE has asserted FOIA Exemption 7(E) to protect from disclosure portions of the staffing

plan attached to contract sample No. 4 (ICE 2014FOIA03585.006248-006250).  Staffing plan

information constitutes a law enforcement procedure because it articulates or establishes the

specific amount and allocation of personnel at a detention facility holding ICE detainees.   In

particular, a staffing plan establishes: (1) the total amount of personnel needed to operate and

maintain security at a detention facility; (2) the locations within the detention facility where

facility personnel are to be posted; and (3) the specific number of personnel that are to be

allocated per shift.  In addition, staffing plan information includes information concerning the

actions that detention facility personnel are to perform during normal and emergency situations

to ensure the security and safety of both personnel and detainees inside the detention facility.

30.      The release of this information could reasonably be expected to reveal when the detention

facility would be most vulnerable to efforts to avoid detection and apprehension when organizing

an escape or disturbance, and how to frustrate or thwart security measures or procedures to

prevent or quell such incidents.  Public awareness of this operational information would aid

those seeking to gain unauthorized entry to a detention facility holding ICE detainees, as they

would readily know the detention facility's staffing limitations or when the facility would be

most vulnerable, which could be exploited to overrun and gain unauthorized entry to the facility

or frustrate security measures taken while transporting ICE detainees.

31.      ICE has asserted FOIA Exemption 7(E) to protect from disclosure portions of the staffing

plans that are not well known to the public, and which if disclosed could reasonably be expected

to risk circumvention of the law.  As indicated above, a staffing plan is a document that shows

the total amount of personnel used at a detention facility for ICE detainees, how many personnel

are to be on duty at any given time, how personnel are allocated by shift inside a detention

facility, and the amount of personnel by location inside the detention facility.

32.     While the public may generally know that detention facilities housing ICE detainees

employ personnel to operate and maintain the security of those facilities or to transport detainees,

the public does not know the total number of personnel employed at these facilities, the number

of facility personnel present during each shift to maintain security at the detention facilities or

while transporting detainees, or the assignments of facility staff during each shift.  If it were

publicly known how many facility employees are employed to transport detainees, how many

officers are used to maintain security at the detention facilities, or the specific number of staff

per shift, plans and countermeasures could be developed to frustrate security measures at the

facilities or while transporting detainees, thus corrupting the integrity of ongoing security and

operational plans at the facilities, and potentially compromising facility staff and detainee safety.

## VII. SEGREGABILITY

33.     5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be

provided to any person requesting such record after deletion of the portions which are exempt."

34.     I have reviewed each record line-by-line to identify information exempt from disclosure

or for which a discretionary waiver of exemption could be applied.

35.     With respect to the records that were released in part, all information not exempted from

disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-

exempt portions were released.

I declare under penalty of perjury that the matters and facts set forth in this declaration

fall within my official purview and, based upon my personal knowledge, information, and belief,

are correct and true.

Signed this  22nd  day of December, 2015 in Washington, D.C.


_____
Fernando Pineiro Jr., Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement