**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DETENTION WATCH NETWORK, CENTER FOR CONSTITUTIONAL RIGHTS,<br><br>　　　　　　　*Plaintiffs*,<br><br>　v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　　*Defendants,*<br><br>　　　　　&<br><br>THE GEO GROUP AND CORE CIVIC (a/k/a Corrections Corporation of America),<br><br>　　　　　　　*Defendant-Intervenors.* | DOCKET NO.:  14-CV-583 (LGS)<br><br><br><br><br><br>**Document Electronically Filed** |

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

---

**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6445
Fax: (212) 614-6499
gschwarz@ccrjustice.org

Ghita Schwarz
Omar Farah
Britney Wilson

**CENTER FOR SOCIAL JUSTICE**
**SETON HALL LAW SCHOOL**
833 McCarter Highway
Newark, New Jersey 07102
(973) 642-8700;
Jenny-Brooke.Condon@shu.edu

Jennifer B. Condon

## **Table of Contents**

Table of Authorities ..................................................................................................iii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT AND FACTS OF THE CASE..............................................................3

    Plaintiffs' FOIA Request and the Case in District Court.............................3

    The Private Contractors' Intervention and Lengthy, Meritless Appeals .......4

    Benefit to the Public of the Information Obtained in the Litigation.............6

ARGUMENT ............................................................................................................7

I.     PLAINTIFFS PREVAILED AT EVERY STAGE OF
      THIS LITIGATION AND ARE ELEIGBLE FOR AND
      ENTITLED TO FEES AND COSTS ....................................................8

    A.  Plaintiffs Substantially Prevailed and Are Eligible
        for Fees and Costs...............................................................8

    B.  Plaintiffs are Entitled to Fees for all Proceeding ..............................9

    C.  The Government Must Compensate Plaintiffs for Fees and
        Costs Incurred During the Intervention and Appellate
        Proceedings Because FOIA Does Not Saddle Successful
        Requesters with Attorneys' Fees, the Government's Position
        Was Aligned with the Intervenors, and It Failed to
        Object to the Intervenors' Appeal.....................................12

    D.  In the Alternative, Defendant-Intervenors, as "Functional
        Equivalents of the Defendants," Must Compensate
        Plaintiffs for Fees Incurred During the Appellate Process ..............16

II.    THE FEES AND COSTS PLAINTIFFS SEEK
      ARE REASONABLE .........................................................................19

    A.  Proposed Hourly Rates for Plaintiffs'
        Counsel Are Reasonable.....................................................20

    B.  Counsel Expended Reasonable Hours in the
        Service of the Litigation....................................................22

C.  Total Fees Incurred ...........................................................................23

D.  Total Costs Incurred..........................................................................24

CONCLUSION.........................................................................................24

## Table of Authorities

CASES                                                                    PAGE NO.

*American Lung Ass'n v. Reilly*, 144 F.R.D. 622 (E.D.N.Y. 1992) ......................... 14

*Anderson v. Sec'y of Health & Human Servs*., 80 F.3d 1500 (10th Cir. 1996) ....... 13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v.*
*County of Albany*, 522 F.3d 182 (2d Cir. 2008) ........................................ 7, 19, 20, 23

*Ass'n of Am. Physicians & Surgeons, Inc*., 391 F.Supp.2d at 179 ......................... 14

*Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
601 F.3d 143 (2d Cir. 2010) ................................................................................... 4, 10

*Charles v. Daley*, 846 F.2d 1057 (7th Cir. 1988) .................................................. 17

*Chrysler Corp v. Brown*, 441 U.S. 281 (1979) ................................. 3, 10, 12, 15, 16

*Citizens for Responsibility & Ethics in Wash., v. Dep't of Justice*,
80 F. Supp. 3d 1 (D.D.C. 2015) ................................................................................ 20

*Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*,
142 F.Supp. 3d 1 (D.D.C. 2015) ............................................................................... 13

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ....................................................... 18

*Diamond v. Charles*, 476 U.S. 54 (1986) .............................................................. 12

*Environmental Defense Fund, Inc. v. Envtl. Prot. Agency*,
672 F.2d 42 (D.C. Cir. 1982) ................................................................................... 14

*Floyd v. City of New York* 959 F. Supp. 2d 540 (S.D.N.Y. 2013) ........................... 21

*Habitat Educ. Center, Inc. v. Bosworth*,
2006 WL 83916, *5 (E.D. Wisc. 2006) .................................................................. 14

*Hall v. Cent. Intelligence Agency*, 115 F.Supp.3d 24 (D.D.C. 2015) ..................... 22

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................... 13, 20

*Hnot v. Willis Group Holdings Ltd*., No. 01 Civ. 6558 (GEL),
2008 WL 1166309 (S.D.N.Y. April 7, 2008) ......................................................... 21

iii

*Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754 (1989) .................. 18

*Judicial Watch, Inc. v. United States Dep't of Commerce*,
470 F.3d 363 (D.C. Cir. 2006) ......................................................................... 13, 16

*Long v. HSBC USA Inc.*, No. 14 CIV. 6233 (HBP),
2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016)....................................................... 21

*LV v. New York City Dep't of Educ.*, 700 F. Supp 2d 510 (S.D.N.Y. 2010) .......... 20

*Mallory v. Harkness*, 923 F. Supp. 1546 (S.D. Fl. 1996) .................................. 17, 18

*Miccosukee Tribe of Indians of Florida v. U.S.*,
1999 WL 33320443, *4 (S.D. Fla. 1999) .............................................................. 14

*Moon v. Gab Kwon*, No. 99 Civ. 11810 (GEL),
2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002)....................................................... 21

*Nat'l Day Laborer Org. Network v. ICE*,
877 F.Supp. 2d 87 (S.D.N.Y. 2012).............................................................. 21, 24

*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704 (D.C. Cir. 1977) ........... 19

*Navig8 Chemicals Asia Pte., Ltd. v. Crest Energy Partners, LP*,
15 Civ. 7639 (PAE), 2015 WL 7566866 (S.D.N.Y. Nov. 24, 2015)...................... 21

*New York Times Co. v. CIA*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017) ........... 20, 22, 23

*Northcross v. Bd. Of Ed. of Memphis City Sch.*, 412 U.S. 427 (1973) ................... 13

*Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) ......................... 7, 10, 12, 24

*Planned Parenthood of Central New Jersey v. Attorney General*,
297 F.3d 253 (3d Cir. 2002)................................................................... 17, 18

*Pollinator Stewardship Council v. EPA*, No. 13-72346,
2017 U.S. App. LEXIS 13343 (9th Cir. June 27, 2017).......................................... 14

*Rosenfeld v. Dep't of Justice*, 903 F. Supp. 2d 859 (N.D. Cal. 2012) .................... 20

*San Luis Valley Ecosystem Counsel v. U.S. Forest Serv.*,
2009 WL 792257, *9 (D. Colo. 2009) ........................................................... 14, 15

*Simmonds v. New York City Department of Corrections*,
No. 06 Civ. 5298, 2008 WL 4303474 (S.D.N.Y. Sept. 16, 2008)........................... 21

*United States ex rel ATC Distrib. Group Inc. v.*
*Ready-Built Transmissions Group, Inc.,*
No. 03 Civ. 2150 (GWG), 2007 WL 2522638 (S.D.N.Y. Sept. 7, 2007) ............... 22

*Warren v. Colvin*, 744 F.3d 841 (2d Cir. 2014) ................................................. 7, 8, 9

FEDERAL STATUTES

5 U.S.C. § 552 ................................................................................... *passim*

28 U.S.C. § 2412 ....................................................................................... 14

42 U.S.C. § 1988 ................................................................................ *passim*

FEDERAL RULES OF CIVIL PROCEDURE

Fed R. Civ. P. 54 ...................................................................................... 24

## PRELIMINARY STATEMENT

The instant motion for attorneys' fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, presents an unusual, but critically important, question: In a FOIA case brought against Defendant federal agencies, where Plaintiffs have prevailed on every important dispute in the district court, Second Circuit Court of Appeals, and the Supreme Court, who should pay for fees and costs incurred in battling the meritless appeal and petition for *certiorari* by Defendant-Intervenors, the nation's two largest private prison contractors?

While the question may be unusual, the answer is straightforward. Pursuant to FOIA's fee-shifting provision, Plaintiffs Detention Watch Network ("DWN") and Center for Constitutional Rights ("CCR") (collectively, "Plaintiffs") should be awarded fees for the entirety of the case, including the appellate proceedings that were frivolously pursued by the non-party intervenors.[1] This action, which sought information about the detention bed quota and the workings of the immigration detention contracting regime, spanned four years, during which Plaintiffs prevailed on virtually all of their claims. Plaintiffs' success has meaningfully benefitted the public understanding of the detention system while advancing the development of the law within the Second Circuit. As substantially prevailing parties within the meaning of the FOIA, Plaintiffs are entitled to fees and costs commensurate with the work performed.

Plaintiffs' entitlement to reasonable fees and costs includes compensation for work done in the Second Circuit and Supreme Court. The fact that the appeal was undertaken by Defendant-Intervenors acting in the shoes of the Government rather than the Government itself does not alter the statute's plain intent that Plaintiffs, non-profits operating exclusively in the public interest, are entitled to fees for the work performed. Plaintiffs were compelled to defend the

---

[1] Plaintiffs and Defendants have entered into a stipulation of settlement for fees and costs incurred in the district court, which was submitted to the judgments clerk on March 2, 2018.  The instant motion addresses only fees and costs for the appellate and Supreme Court proceedings.

1

district court's unimpeachable disclosure order against the Defendant-Intervenors' groundless appeal and petition for *certiorari* where the Government Defendants themselves declined to pursue their exclusive right to appeal. Defendant-Intervenors' independent appeal and petition, undertaken without any objection from the Government, delayed implementation of this Court's order by more than fifteen months, during which the Defendant-Intervenors advocated for the position the Government took in the district court, allowing the Government to avoid the costs of appealing themselves.

For their part, the Defendant Agencies, after advocating for the private prison contractors' purported commercial interests in the district court, repeatedly refused to oppose the Intervenors' successful efforts to delay implementation of the Court's order, and thus benefitted via delay from the Intervenors' meritless appeal. This case is thus no different from any other FOIA matter in which defendant agencies appeal and lose, and in which the Government is ordered to compensate Plaintiffs for the work incurred during appellate proceedings.

In the alternative, the Defendant-Intervenors, who acted as functional equivalents of the Defendants during appellate proceedings, must be treated like the Government for purposes of the statutory obligation to compensate a victorious FOIA requester for reasonable attorneys' fees. Allowing the Contractors to escape fee-shifting in this case would undermine the purpose of FOIA and reward dilatory tactics and baseless arguments by third-party corporate interlopers. Well-resourced corporate intervenors should not be permitted to exploit FOIA in order to attack a clearly correct and unimpeachable judicial order vindicating the public right to know, and then saddle small, non-profit organizations with the costs of defending that decision.

While Plaintiffs' pursuit of fees in an appellate process in which the Government refused to participate may seem novel, it is consistent with well-settled principles of fee-shifting

followed within this Circuit. Moreover, to the extent there is anything exceptional about this Motion, that is entirely due to Defendant-Intervenors' frivolous choice to independently appeal a FOIA judgment for the purpose of stopping disclosure (and thereafter pursue a motion then en *banc* review and then a frivolous petition for *certiorari* review by the Supreme Court), a move which has never been attempted in the four decades since the Supreme Court's landmark decision in *Chrysler Corp v. Brown*, 441 U.S. 281 (1979).

Failure to compensate Plaintiffs for work incurred during this unusual appellate process would encourage third parties to intervene post-judgment in FOIA cases, with the tacit approval of the Government, to delay hard-won victories for transparency, thus undermining the primary purpose of FOIA. Nonprofit plaintiffs operating exclusively in the public interest should not have to bear the cost of the meritless litigation choices of extremely profitable private entities and the government agencies that effectively condone them; either the Government or the Intervenors, not the Plaintiffs, must be accountable for these fees. The FOIA clearly entitles prevailing parties to an award of fees and costs for the entirety of this case, and Plaintiffs must be compensated for all the work done to win transparency in government detention contracting.

## STATEMENT AND FACTS OF THE CASE

### Plaintiffs' FOIA Request and The Case in District Court

On November 25, 2013, Plaintiffs DWN and CCR submitted a FOIA request to Defendants seeking information regarding ICE's controversial interpretation and implementation of the detention bed quota. Compl. ¶ 2, (ECF No. 1). As non-profit, human rights advocacy and legal groups, Plaintiffs sought to inform public debate about the financial incentives underlying the immigration detention contracting regime and contractors' influence on immigration detention policy. Plaintiffs thus requested, *inter alia,* records related to ICE's contracts with both

3

private prison corporations and local governments. *Id.* ¶¶ 2, 57. After Defendants failed to produce documents in response to Plaintiffs' requests, on January 30, 2014, Plaintiffs filed a Complaint to compel Defendants to search for and produce responsive documents. (ECF No. 1).

In the litigation that ensued, Plaintiffs substantially or entirely prevailed in every significant dispute in the district court, obtaining more than 40,000 pages of documents and, after lengthy briefing, winning an order granting summary judgment on every claim before the Court.[2] Specifically, on July 14, 2016, the district court granted Plaintiffs' motion in full and denied the Defendants' cross-motion, ordering the Government to disclose information that had been withheld pursuant to Exemptions 4 and 7E. (ECF No. 123). The Court held that Defendants had "not met their burden to show that bed-day rates, unit prices, and staffing plans (1) were 'obtained from a person' or (2) are confidential" and that Defendants' argument that staffing plans are protected by Exemption 7E "fails under a plain reading of the statute." (ECF No. 123). The order and opinion held that the Second Circuit's decision in *Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) unequivocally applied to government contracts with private detention companies, and made important factual findings regarding the lack of competition for immigration detention contracts. *Id. See* Declaration of Ghita Schwarz In Support of Plaintiffs' Motion for Attorneys' Fees and Costs ("Schwarz Decl.") at ¶¶ 13-17.

### The Private Contractors' Intervention and Lengthy, Meritless Appeals

Having succeeded in every argument made in their partial summary judgment motion, Plaintiffs expected to obtain and disseminate the withheld information. Instead, the nation's two

---

[2] Plaintiffs also succeeded in winning aggressive production orders (ECF Nos. 40, 48) and overcoming Defendants' motion to dismiss, which Defendants withdrew after Plaintiffs submitted their opposition papers. (ECF Nos. 14, 28, 29, 29-6, 32).

largest private prison contractors, the GEO Group  ("GEO") and Corrections Corporation of America, now known as CoreCivic, moved and were granted leave to intervene, post-judgment, after the Defendant agencies decided not to appeal the Court's order. (ECF Nos. 127, 133, 141). Notably, the Defendant agencies, whose summary judgment arguments sought to vindicate the private contractors' desire to keep secret pricing information in government contracts, informed the Court that they did not oppose the contractors' intervention. (ECF No. 129). The contractors, now Defendant-Intervenors, made clear that they intended to appeal the release of the government's information, using the same arguments that had failed Defendants in the summary judgment briefing. Defendant-Intervenors filed their notice of appeal on September 9, 2016 (ECF Nos. 142, 143).

Plaintiffs responded quickly and efficiently. Plaintiffs filed a notice of cross-appeal on the grant of intervention on September 30, 2016 (ECF No. 146). Before Defendant-Intervenors even filed their merits brief, Plaintiffs moved to dismiss the appeal for lack of standing on November 29, 2016 (2d Cir. Case No. 16-3141, ECF No. 65-1). Plaintiffs won their motion to dismiss in the Second Circuit in February, 2017 via a summary order reflecting the facial invalidity of the intervenors' appeal (2d Cir. Case No. 16-3141, ECF Nos. 137, 138), and prevailed once again in April against the contractors' motion for reconsideration and *en banc* review. (2d Cir. Case No. 16-3141, ECF Nos. 149-50).  GEO then filed a petition for *certiorari* to the Supreme Court, which was denied on October 10, 2017. (2d Cir. Case No. 16-3141, ECF No. 178). *See* Schwarz Decl. at ¶¶ 19-24.

Throughout this process, Plaintiffs were deprived of the information to which they were entitled; as is routine in FOIA cases, the district and appellate courts granted stays of the mandate to release information in response to Defendant-Intervenors' requests. (ECF Nos. 150,

5

164; 2d Cir. Case No. 16-3141, ECF No. 170). As a result, it was not until October 13, 2017 that the Second Circuit finally issued a mandate to disclose the information. (2d Cir. Case No. 16-3141, ECF No. 186). Plaintiffs and the Government subsequently executed a stipulation for the release of information that included unit prices and staffing plans, the information that the Defendant agencies had initially sought to hide.  (ECF No. 189).

Although the Defendant-Intervenors' appeal represented an extraordinary intrusion on the Government's exclusive decision-making authority under the FOIA, at no point did the Defendants object. Indeed, when the Supreme Court sought Defendants' position, the Government failed to provide one. *See* Sup. Ct. Dkt 17-64 (noting waiver of right of respondent ICE et al. to respond to GEO's petition). Thus, the Government passively allowed its arguments to receive a second airing before the appellate courts, but without formally attaching its name to any briefs.

### Benefit to the Public of the Information Obtained in the Litigation

The information obtained from the government throughout the litigation benefitted the public, as Plaintiffs used information produced because of the litigation to raise awareness and educate the public and lawmakers about controversial detention contracting practices. For example, Plaintiffs have widely disseminated information obtained through the FOIA productions, analyzing and publishing findings on email listservs to DWN's membership and telebriefings with press. Schwarz Decl. at ¶ 25. Much of Plaintiffs' work focused on the use of "guaranteed minimum" payments to private prison corporations and local governmental contractors, the subject of much of the summary judgment briefing.

Plaintiffs jointly published two influential reports on the use of guaranteed minimums in detention contracting and the resulting incentives to detain immigrants in select facilities, mostly

private, that had won such minimum payments through the contracting process. The first, *Banking on Detention: Local Lockup Quotas and the Immigrant Dragnet* (June 2015) inspired several Congressional representatives to introduce legislation to ban guaranteed minimums in government detention contracts. The second, *Banking on Detention: 2016 Update* (June 2016), revealed for the first time the use of guaranteed minimums and similar incentives in contracts for family immigration detention.[3] Both reports, as well as the ongoing targeted advocacy by DWN, garnered significant press and public attention.  Schwarz Decl. ¶ 25.

## ARGUMENT

Plaintiffs are entitled to reasonable attorneys' fees and costs for work done in appellate and Supreme Court proceedings. Under FOIA's fee-shifting provision, 5 U.S.C. § 552(a)(4)(E)(ii), courts "assess against the United States reasonable attorneys' fees and other costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." In adjudicating claims for fees under FOIA, courts undertake a two-step analysis that examines Plaintiffs' fee "eligibility" and fee "entitlement." *Warren v. Colvin*, 744 F.3d 841, 844 (2d Cir. 2014) (*per curiam*); *Pietrangelo v. U.S. Army*, 568 F.3d 341 (2d Cir. 2009) (*per curiam*). Once the plaintiff is deemed both eligible and entitled, the court determines whether the requested fees are reasonable, pursuant to the "presumptively reasonable fee" method. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008). Plaintiffs meet both standards here.

Plaintiffs are eligible and entitled to reasonable fees within the plain meaning of FOIA for work throughout the entirety of this litigation because they substantially prevailed, and their

---

[3] The reports are available at
https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20CCR%20Banking%20on%20Detention%20Report.pdf and
https://www.detentionwatchnetwork.org/sites/default/files/reports/Banking%20on%20Detention%202016%20Update_DWN%2C%20CCR.pdf.

work significantly benefitted the public. As reflected in the stipulation between the Government

and Plaintiffs for attorneys' fees and costs in the district court, Plaintiffs' challenge to Defendant

agencies' delays in production and to their faulty invocation of Exemptions 4 and 7E caused the

release of crucial information at numerous points in the litigation. But this was not the end of

Plaintiffs' work, nor a one-off success. Indeed, all challenges to the release of such information

concluded favorably for Plaintiffs and Plaintiffs must therefore also be compensated for work

countering Defendant-Intervenors' meritless appeals. Because combatting such tactics was

necessary to obtain the relief to which they were entitled, a. failure to compensate Plaintiffs for

this work would reward Defendants and Defendant-Intervenors for groundless litigation to delay

the release of information and undermine FOIA's goals. Moreover, Plaintiffs' fee request is

reasonable. Plaintiffs' proposed hourly rates fall within accepted ranges for experienced litigators

in the Southern District, and the hours they have expended were appropriate given the

complexity of the legal and factual analysis involved as well as the unusual litigation postures

they were forced to address.

## I.    PLAINTIFFS PREVAILED AT EVERY STAGE OF THIS LITIGATION AND ARE ELIGIBLE FOR AND ENTITLED TO FEES AND COSTS

### A. Plaintiffs Substantially Prevailed and Are Eligible for Fees and Costs

To satisfy the first step of the Second Circuit's standard for awarding attorneys' fees in

FOIA cases, Plaintiffs must show they are eligible for fees by demonstrating that they are

substantially prevailing parties. *Warren*, 744 F.3d at 844. There is no question that Plaintiffs

have substantially prevailed under § 552(a)(4)(E)(ii).   Under the statute, a FOIA requester

"substantially prevails" by obtaining "relief through either "(I) a judicial order, or an enforceable

written agreement or consent decree; or (II) a voluntary or unilateral change in position by the

agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Plaintiffs secured both. Plaintiffs obtained favorable judicial orders not only with respect to the relief obtained in the district court, which is not at issue in the instant motion, but also with respect to multiple appellate rulings, which repeatedly upheld such relief.

Following Defendants' invocation of Exemption 4, and later, mid-briefing, of Exemption 7E, Plaintiffs vigorously fought for the release of information that Defendants and private contractors wished to keep secret, winning on every argument before the district court. (ECF No. 123).[4] In the wake of the district court's grant of summary judgment to Plaintiffs, private contractors GEO and CoreCivic intervened for the purpose of appeal. Rather than wait for lengthy merits briefing, Plaintiffs moved to dismiss the appeal for lack of standing. They succeeded completely, first winning a summary decision by a three-judge panel of the Second Circuit Court of Appeals and a denial of reconsideration *en banc*, then defeating the GEO Group's petition for *certiorari* to the Supreme Court. These significant decisions, easily satisfy the "judicial order" or "enforceable written agreement" prong of 5 U.S.C. §552(a)(4)(E)(ii). Plaintiffs are clearly "substantially prevail[ing]" parties eligible for fees and costs.

**B**. **Plaintiffs Are Entitled to Fees and for all Proceedings.**

To satisfy the second step of FOIA's fee-shifting analysis, Plaintiffs must also show that they are entitled to fees. *Warren*, 744 F.3d at 844. A plaintiff's "entitlement" to recover attorneys' fees and costs is assessed by several factors, including (1) "the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested

---

[4] While Plaintiffs and the Government have stipulated to a settlement regarding fees for work done in the district court, Plaintiffs discuss the complete success of Plaintiffs' summary judgment motion to support their position that they have substantially prevailed in appellate proceedings.

information." *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009).  Plaintiffs satisfy all four factors.

First, this lawsuit has resulted and will continue to result in a substantial benefit to the public in raising awareness and educating the public and lawmakers about controversial detention contracting practices, including the use of guaranteed minimums in government contracts with private prison corporations and local governmental contractors. Plaintiffs have widely disseminated information obtained through the FOIA productions, analyzing and publishing findings through two reports on detention contracting, one of which resulted in the introduction of legislation in Congress. Schwarz Decl. at ¶ 25.

This litigation also benefitted the public by enforcing important limits on private contractors' ability to shield government information from public release. Specifically, by establishing that the Second Circuit's analysis of Exemption 4 in *Bloomberg*, *L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143 (2nd Cir. 2010), applies to private detention contracting and by rejecting the idea that staffing plans in private prison plans are covered by Exemption 7E, Plaintiffs helped ensure that public access to government information about detention policy, an issue of significant public importance, is not subject to baseless claims of corporate privilege. (ECF No. 123). Further, by challenging GEO's and CoreCivic's appeal through a motion to dismiss, Plaintiffs furthered the principle articulated in *Chrysler Corp v. Brown*, 441 U.S. 281 (1979), that FOIA overwhelmingly was intended to be a disclosure statute and only the government has standing to invoke an exemption. That principle ultimately promotes the goals of transparency and democratic accountability that are the central purpose of the FOIA.

Second, Plaintiffs are nonprofit social justice groups with no commercial interest in the outcome of the litigation. DWN is an advocacy organization whose mission is to combat immigration detention in all its forms, and CCR is a legal and advocacy firm whose mission is to fight for human rights and government accountability.

Third, Plaintiffs pursued this action solely to contribute to the public understanding of the detention bed quota, detention contracting, and the immigration detention regime.

Fourth, both Defendants' and Defendants-Intervenors' positions in appellate proceedings were far from reasonable.[5] After the Court awarded summary judgment to the Plaintiffs and the GEO Group moved to intervene, Defendants advised the Court that they did not object to intervention for the purpose of appeal. (ECF No. 129). Defendants did so even though they had no intention of appealing the district court's unimpeachable orders themselves. Defendants' position on intervention was thus unreasonable, because it passively allowed the Government arguments' to receive a second airing before the appellate courts, but without the responsibility that attaches to a formal appeal. Moreover, the Government's position helped facilitate a 15-month postponement of the implementation of the district court's order, undermining the district court's decision and unnecessarily depriving Plaintiffs and the public of the relief secured.

Defendant-Intervenors' positions were equally unreasonable. The GEO Group ("GEO"), joined by CoreCivic, failed to intervene until after the Court's summary judgment order and did so only to pursue a meritless appeal, for which they lacked standing, in the Second Circuit. Reflecting the patent lack of merit to the Intervenors' appeal, a unanimous three-judge panel

---

[5] Defendants have entered into a settlement agreement with the Plaintiffs to cover fees and costs incurred in the district court. Thus, Plaintiffs do not address Defendants' decision to invoke exemptions that were clearly foreclosed by Second Circuit precedent (ECF Nos. 74-76, 86-93); and their eleventh-hour invocation of Exemption 7E (ECF Nos. 104-109) that the Court held "fail[ed] under a plain reading of the statute." (ECF No. 123).

granted Plaintiffs' motion to dismiss for lack of standing in a summary decision. Thereafter, the

Defendant-Intervenors moved for reconsideration of this summary decision *en banc*. They lost

again. The GEO group then filed a patently meritless petition for *certiorari* with the Supreme

Court, which was finally denied in October of 2017, fifteen months after the district court had

issued its disclosure order. See Schwarz Decl. ¶¶ 21-24. The Defendant-Intervenors, who

benefitted from stays of the disclosure order through these tactics, pursued these appeals in the

face of decades of unquestioned Supreme Court precedent establishing their lack of independent

Article III standing under the FOIA to stop the government from disclosing information. *See

Chrysler Corp.* 441 U.S. at 291-293; *Diamond v. Charles,* 476 U.S. 54 (1986). Further, the GEO

Group pursued *certiorari* with absolutely no evidence of a circuit split or any other factor

traditionally associated with a grant of *certiorari*. These tactics were for one purpose only: to

delay implementation of the district court's order and to thwart the lawful release of information

pursuant to the FOIA.

   For all these reasons, Plaintiffs have substantially prevailed, satisfy the four *Pietrangelo*

factors, and are clearly "entitled" to fees and costs for all work done in the appellate proceedings.

Whether the fees and costs should be paid by the Government or by the Defendant-Intervenors is

addressed below.

> **C. The Government Must Compensate Plaintiffs for Fees and Costs Incurred
> During the Intervention and Appellate Proceedings Because FOIA Does Not
> Saddle Successful Requesters with Attorneys' Fees, the Government's Position
> Was Aligned with the Intervenors, and It Failed to Object to the Intervenors'
> Appeal.**

The plain language of 5 U.S.C. § 552(a)(4)(E) supports full compensation by the United

States to Plaintiffs for work done in challenging the Intervenors' appeal to the Second Circuit

and GEO's petition for *certiorari*. As a preliminary matter, courts have recognized that the

Government is responsible for attorneys' fees where plaintiffs are challenging arguments made by intervenors in the district court. *See Anderson v. Sec'y of Health & Human Servs.*, 80 F.3d 1500, 1505 (10th Cir. 1996), Here, because Defendant-Intervenors' appeal of a FOIA disclosure order independently of the government was unprecedented, there is no case law under FOIA that directly addresses the government's liability for attorneys' fees for the appeal process where the government itself did not appeal.[6] FOIA's text, however, reflects a crystal clear policy:  the statute does not saddle successful requesters with attorney's fees accrued defending the public's right to know.

Moreover, Courts have recognized that decisions which "involve different fee-shifting statutes" are "instructive in construing" fee awards under FOIA. *Judicial Watch*, 470 F.3d at 374; *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice*, 142 F.Supp. 3d 1, 9 n.2 (D.D.C. 2015) (same); *see also Northcross v. Bd. Of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (noting that use of similar language in fee-shifting statutes is "a strong indication" that they should be interpreted alike); *Hensley v. Eckerhart*, 461 U.S. 424, 433, n.7 (1983) (stating court's conclusions are applicable to all fee-shifting statutes with

---

[6] The lone case addressing the government's responsibility for attorneys' fees for work done to challenge a third-party (though not an intervenor), *Judicial Watch, Inc. v. United States Dep't of Commerce*, 470 F.3d 363 (D.C. Cir. 2006), is easily distinguishable. There, the work incurred was as a result of Plaintiffs' initiation of discovery disputes with non-intervening third parties, in which the Plaintiffs took "fruitless" and failed positions completely separate from its FOIA challenge to the government defendant. 470 F.3d at 372. Here, Plaintiffs, far from initiating further legal work independent of the FOIA, found themselves in the position of opposing third-party private contractors' appeal of a FOIA decision based on positions already taken by the Defendant agencies, who had in fact articulated the eventual intervenors' positions in the district court with the cooperation and assistance of these same private contractors. Further, Plaintiffs made every effort to streamline and minimize the work done in challenging these baseless appeals, first challenging the intervention itself in the district court, then successfully moving to dismiss in the Second Circuit and opposing *certiorari* in the Supreme Court, avoiding lengthy merits briefing.

"prevailing party" language). These analogous statutes make clear that the Government is responsible for the fees and costs incurred during the appellate process here.

In particular, cases litigated under the fee-shifting provision of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provide support for Plaintiffs' recovery of fees and costs for work done challenging GEO's and CoreCivic's intervention and appeal of the district court's order. The EAJA provides for recovery by the "prevailing party . . . in any civil action brought by or against the United States." 28 U.S.C. § 2412(d)(1)(A). Courts have assessed attorneys' fees against the government for plaintiffs' litigation with third-party intervenors where the (1) the intervenors' defended "disputed" government positions; (2) the presence of the Intervenors did not prompt plaintiffs to seek fees for duplicative work, and (3) "most significantly, [the agency] never opposed any of the positions asserted by the intervenors." *Environmental Defense Fund, Inc. v. Envtl. Prot. Agency*, 672 F.2d 42, 55–56 (D.C. Cir. 1982). For example, in *American Lung Ass'n v. Reilly*, 144 F.R.D. 622, 628-29 (E.D.N.Y. 1992), an action against the EPA, the court found that government liability for fees should not exclusively turn on "whether or not the government participates in a phase of a lawsuit" because the government's interests may be aligned with a private intervenor-defendant, particularly where the intervenor raised "defenses almost identical to the EPA's."[7] Most recently, in *Pollinator Stewardship Council v. EPA*, No. 13-72346, 2017 U.S. App. LEXIS 13343 (9th Cir. June 27,

---

[7] District courts in more recent unpublished opinions have also followed this approach. *See, e.g.*, *Habitat Educ. Center, Inc. v. Bosworth*, 2006 WL 83916, *5 (E.D. Wisc. 2006) (declining to reduce fee award against the government for hours expended by Plaintiffs "in opposing third-parties' efforts to intervene," where the government "took no position on the issue," citing *Reilly*, 144 F.R.D. at 629, and *Ass'n of Am. Physicians & Surgeons, Inc.*, 391 F.Supp.2d at 179); *San Luis Valley Ecosystem Counsel v. U.S. Forest Serv.*, No. 04-cv-01071, 2009 WL 792257, *9 (D. Colo. March 23, 2009) (concluding that it "may be appropriate to award fees to a prevailing party for time spent opposing arguments by intervenors upon which the agency took no position because . . . the agency has the luxury of deferring to the intervenor's request for relief"); *Miccosukee Tribe of Indians of Florida v. U.S.*, 1999 WL 33320443, *4 (S.D. Fla. 1999) (same).

14

2017), the Ninth Circuit affirmed the government's liability for fees under the EAJA for Plaintiff's opposition to an intervenor's brief where "the EPA took no position" on the motion to intervene and "did not join" in the intervenor's briefing.

These EAJA cases provide strong support for the government's liability for attorneys' fees for work incurred by Plaintiffs in challenging the intervention and appeals by GEO and CoreCivic. The Defendant-Intervenors baselessly pursued their right to appeal in the face of forty years of precedent concluding that third-parties lack all authority to restrict the release of information the Government has chosen to disclose under the FOIA. *Chrysler*, 441 U.S. at 291-293 (explaining Congressional concern with "the *agency's* need or preference for confidentiality" and finding that "the FOIA by itself protects the submitters' interest in confidentiality only to the extent that this interest is endorsed by the agency collecting the information.") (emphasis in original). Defendants failed to take a position throughout the appellate process, explicitly refusing to object to the contractors' intervention in the district court and even waiving their rights to submit a brief to the Supreme Court. (*See* Sup. Ct. Dkt 17-64 (noting waiver of right of respondent ICE et al. to respond).  Enjoying the "luxury of deferring to the intervenor's request for relief," *San Luis Valley*, 2009 WL 792257 at *9, the Government allowed the government to delay disclosure – its initial goal – even as it avoided the risks and labor of appeal.

By yielding its exclusive authority over FOIA disclosure to the intervenors, the Government's position made possible GEO and CoreCivic's dilatory appeals. Indeed, the Defendant-Intervenors repeatedly suggested in briefing that Defendants endorsed their position, which the Government never disputed or sought to dispel. *See, e.g.*, Case No. 16-3141, ECF No. 138, CCA Petition for Panel Rehearing *en banc*, (stating that "the agency (DHS/ICE) *did*

*endorse CCA's interest*) (emphasis in original); The GEO Group Petition for *Certiorari* at 13 (stating that "DHS/ICE *has* endorsed GEO's legally protected interest in confidentiality") (emphasis in original). Defendants' silence in the face of these tactics and the contractors' claims that the government endorsed their position effectively condoned the intervenors' appeal and contributed to the extensive delays in implementation of the district court's order.

Because Defendants' actions further compelled litigation by Plaintiffs to defend the public's right to information access in a case brought against the United States, under a plain reading of 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs are entitled to these fees and costs from Defendants DHS and ICE.

### D. In the Alternative, Defendant-Intervenors, as "Functional Equivalents of the Defendants," Must Compensate Plaintiffs for Fees Incurred During the Appellate Process.

GEO and CoreCivic attempted an aberrant procedural maneuver unsupported by any legal authority: appealing an order for government agencies to disclose documents where the government itself did not do so. Clearly foreclosed by *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979), such an appeal was unprecedented because it was meritless. Thus, as with the Government's liability for fees, there is no case law under FOIA that directly addresses the Defendant-Intervenors' liability. FOIA's firm policy, however, made clear from its text, reflects that Congress did not want to saddle successful requesters with attorney's fees accrued defending the public's right to know. Moreover, "different fee-shifting statutes" are "instructive in construing" fee awards under FOIA. *See e.g.*, *Judicial Watch*, 470 F.3d at 374, *supra*.

Here, cases litigated under the Civil Rights Attorney's Fee Award Act of 1976, 42 U.S.C. § 1988, provide support for Plaintiffs' recovery of fees and costs from GEO and CoreCivic. Section 1988 provides courts in civil rights actions with authority to award "the prevailing party,

other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

Several federal courts have awarded or upheld awards of attorneys' fees against intervenors under Section 1988, pointing to the unfairness of forcing prevailing plaintiffs to expend time and resources defending their claims against third-party intervenors without the prospect of recovering fees. *See Planned Parenthood of Central New Jersey v. Attorney General*, 297 F.3d 253, 262-63. (3d Cir. 2002). For example, in *Planned Parenthood*, the Third Circuit held that an intervenor is not "blameless" when it "steps out of its role" and becomes "the functional equivalent of a defendant in the case" by defending the case in the place of the real party in interest. *Id*. at 257, 264. This is especially so if, "without [the intervenor], there would be no case." Id. at 264. Indeed, failure to allow plaintiffs to recover fees from an intervenor would create "a major loophole" in "the statutory scheme for reimbursing plaintiffs." *Id.* at 262. *See also Charles v. Daley*, 846 F.2d 1057 (7th Cir. 1988); *Mallory v. Harkness*, 923 F. Supp. 1546, 1553 (S.D. Fla. 1996), *affirmed without decision*, 109 F.3d 771 (11th Cir. 1997).

As in these cases, GEO and CoreCivic are not blameless parties. To the contrary, they are the sole reason that implementation of the federal district court order was significantly delayed. Asserting the same defenses of Exemptions 4 and 7E as the government defendants, GEO and CoreCivic behaved as if they were the Government. Further, as Plaintiffs' sole opposition, these functional defendants blocked Plaintiffs' relief on the merits. Because the government defendants did not pursue an appeal, without GEO and CoreCivic's intervention, there would have been no case. GEO and CoreCivic "chose to intervene and litigate vigorously," appealing the court's grant of Plaintiffs' motion to dismiss—in GEO's case—all the way to the Supreme Court. *Planned Parenthood*, 297 F.3d at 262. This meritless attempt to prevent the public

release of government information in the absence of any legal authority to do so was "unreasonable," "without foundation," and even "frivolous," and Plaintiffs are entitled to seek fees for the work done to defeat their efforts. *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 768 (1989) (Blackmun, J., concurring).

Plaintiffs are non-profit organizations that should not be forced to bear the hefty financial brunt of defending orders vindicating public access to government information under the FOIA without recovering attorneys' fees for such work. Such an outcome would discourage the public from enforcing its right of access to government information under FOIA, and indeed encourage baseless appeals by third-parties that would merely delay the implementation of disclosure orders, thwarting the purpose of FOIA. Indeed, several courts have pointed to the perversity of the result if intervenors could defend unconstitutional government conduct but then use their intervenor status to avoid fees. *See Mallory v. Harkness*, 923 F. Supp. 1546, 1554 (S.D. Fl. 1996) (permitting attorney general as intervenor to "escape liability for attorney's fees" would allow "a loophole [that] violates the policy behind 42 U.S.C. § 1988"); *Planned Parenthood*, 297 F.3d at 262 ("[D]enying Plaintiffs attorneys' fees would undermine Section 1988's purpose by creating 'a major loophole' [in] the statutory scheme for reimbursing plaintiffs").

In sum, fee-shifting under FOIA is necessary to support the efforts of members of the public who challenge the improper withholding of information and whose efforts promote government transparency. *See Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (drawing distinction regarding the appropriateness of fee-shifting under FOIA based upon whether a plaintiff "seeks to advance his private commercial interests and thus needs no incentive to file suit" or is a journalist or "public interest group seeking information to further a project benefitting the general public"). Indeed, as the United States Court of Appeals for the D.C.

Circuit recognized in *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977), "[t]he touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA." Here, "an award of attorneys' fees is necessary to implement the FOIA," because without Plaintiffs having fought the contractors' attempt to prevent the disclosure of government documents, the public would not have had access to information of significant public importance. *See id.* at 715.

Plaintiffs pursued this action in the public interest and in the face of unreasonable positions taken by Defendants and Defendant-Intervenors throughout the litigation. As a result, Plaintiffs are entitled to recover the full amount of reasonable attorneys' fees and costs under the FOIA. For these reasons, Plaintiffs are entitled to full fees and costs under the FOIA for work incurred in battling the intervention and appeal.

## II.     THE FEES AND COSTS PLAINTIFFS SEEK ARE REASONABLE

In the Second Circuit, attorneys' fees are generally calculated based on the determination of the "presumptively reasonable fee," sometimes called the "lodestar," which is the prevailing hourly rate for legal services in the district multiplied by the total number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2007). Courts set hourly rates by evaluating whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). Plaintiffs' proposed rates are commensurate with their experience and consistent with prevailing rates for fee awards in FOIA cases in the Southern District.

When determining the appropriate rate and the amount of fees due, courts have the discretion to consider many equitable factors, such as "the complexity and difficulty of the case,"

19

the available expertise and capacity of the client's counsel and "the resources required to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184; *LV v. New York City Dep't of Educ.*, 700 F. Supp 2d 510, 513 (S.D.N.Y. 2010). "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

### A. Proposed Hourly Rates for Plaintiffs' Counsel Are Reasonable

Both the Center for Constitutional Rights ("CCR") and the Center for Social Justice at Seton Hall University School of Law ("CSJ") have a strong history of successful civil rights and FOIA litigation. Their expertise in complex FOIA and civil rights litigation was critical to the ability of Plaintiffs' counsel to effectively prosecute the lawsuit to the benefit of their clients and the public. As documented in their accompanying declarations and in hourly rates granted in similar cases, Plaintiffs' proposed rates are commensurate with their experience and consistent with prevailing rates for fee awards in FOIA cases in the Southern District.

In the most recent attorneys' fees decision in a FOIA case in the Southern District, *New York Times Co. v. CIA*, 251 F. Supp. 3d 710 (S.D.N.Y. 2017), the court granted – with no opposition from the government defendant – Plaintiffs' proposed rates of "$650/hour for a seasoned FOIA litigator with fourteen years' experience" and "$400/hour for more junior associates." 251 F. Supp. 2d at 715.[8] Plaintiffs seek similar or lower rates for litigators with parallel expertise: $660 for CCR Legal Director Azmy; $625 for CCR Senior Staff Attorney Schwarz and Seton Hall University Law School Professor Condon, $550 for CCR Senior Staff Attorney Farah, and $325 for Bertha Fellow/Attorney Wilson. *See* Schwarz Decl. at ¶¶ 30-42

---

[8] These rates are in line with or below those of litigators in legal markets comparable to the Southern District. *See e.g., Citizens for Responsibility & Ethics in Wash., v. Dep't of Justice*, 80 F. Supp. 3d 1, 5 (D.D.C. 2015) (setting rate at between $709 and $771 for experienced FOIA litigators in Washington); *Rosenfeld v. Dep't of Justice*, 903 F. Supp. 2d 859, 877-78 (N.D. Cal. 2012) (approving rate of $700 per hour in FOIA case in San Francisco).

(detailing experience of CCR attorneys); Condon Decl. at ¶ 6-18 (detailing experience of CSJ attorneys).

The prevailing rate for paralegals in the Southern District is $150. *See, e.g., Long v. HSBC USA Inc.*, No. 14 CIV 6233 (HBP), 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (awarding $150 per hour for paralegal at plaintiff-side employment law firm); *Navig8 Chemicals Asia Pte., Ltd. v. Crest Energy Partners, LP*, 15 Civ. 7639 (PAE), 2015 WL 7566866 at *2 (S.D.N.Y. Nov. 24, 2015) (awarding hourly rate $150 for paralegal work). But where paralegals have significant experience and have made material contributions to a case, courts will award a higher rate. *See Simmonds v. New York City Department of Corrections*, No. 06 Civ. 5298, 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008) (awarding, in 2008, a rate of $140 to a paralegal with "substantial experience" where standard hourly rate was $100); *Hnot v. Willis Group Holdings Ltd.,* No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at *3 (S.D.N.Y. April 7, 2008) ($150 per hour found reasonable in 2008 for paralegal). A decade after these cases were decided, a rate of $225, 50% above the standard rate, is reasonable for Senior Paralegal Ian Head, who has ten years of experience managing the document review and analysis for the Center for Constitutional Rights' FOIA cases and civil rights cases, including complex, wide-ranging and landmark cases such as *Nat'l Day Laborer Org. Network v. ICE*, 877 F.Supp. 2d 87, 93 (S.D.N.Y. 2012) and *Floyd v. City of New York* 959 F. Supp. 2d 540 (S.D.N.Y. 2013). *See* Schwarz Decl. at ¶¶ 43-45 (detailing experience of Mr. Head).

Law students are "generally billed at rates similar to those of paralegals." *Moon v. Gab Kwon*, No. 99 Civ. 11810 (GEL), 2002 WL 31512816 (S.D.N.Y. Nov. 8, 2002). In this instance, the law students at Seton Hall School of Law, all third-year students, played a significant role in research, document review, and drafting of a novel motion to dismiss in the Second Circuit. *See*

Condon Decl. at ¶¶ 16-19. Plaintiffs request an hourly rate of $200 for the law students. *See United States ex rel ATC Distrib. Group Inc. v. Ready-Built Transmissions Group, Inc.*, No. 03 Civ. 2150 (GWG), 2007 WL 2522638 at *2-3 (S.D.N.Y. Sept. 7, 2007) (awarding "summer associate," by definition a law student, an hourly rate of $185 in 2007).

There is no question that Plaintiffs achieved success in the litigation overall, as well as in the creative and efficient approach to the Defendant-Intervenors' meritless appeals. The appellate litigation at issue here involved sophisticated motion practice on constitutional questions such as standing, and resulted in a series of successful orders from the Second Circuit and the Supreme Court. It necessitated the skill and experience of seasoned federal litigators and the assistance of junior attorneys, law students, and staff. Plaintiffs' proposed rates are reasonable because they reflect prevailing market rates for attorneys and staff with comparable levels of experience, reputation and skill.

### B.  Counsel Expended Reasonable Hours In the Service of the Litigation

The extensive litigation tasks over 15 months of appellate litigation required the work of several attorneys and staff. Far from causing duplication, the collaboration among counsel resulted in several strategic decisions that streamlined and ultimately shortened the litigation. Plaintiffs are entitled to compensation for work done on multiple briefings, including work on opposition to Defendant-Intervenors' motion to stay the release of information during appellate proceedings. While this opposition brief may have been unsuccessful in the first instance, it was necessary to vindicate Plaintiffs' rights and led to ultimate success. *Hall v. Cent. Intelligence Agency*, 115 F.Supp.3d 24, 29 (D.D.C. 2015) (a fee applicant "who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage,"); *New York Times*, 251 F. Supp. 3d 710, 716 (S.D.N.Y. 2017) (fees are

appropriate where a "loss during this round of motion practice was a necessary step en route to prevailing.") While Plaintiffs are entitled to compensation for hours spent preparing a fee demand and the instant brief, *New York Times*, 251 F. Supp. 3d at 716, and although the novel nature of the question presented required extensive hours of attorney research and drafting, *see* Schwarz Decl. Exhibit 5, Plaintiffs have decided to waive such fees, which totaled $45,517.50.

In the interest of exercising further billing judgment, however, Plaintiffs have made a number of additional deductions and discounts. First, Plaintiffs have determined that they will not seek fees for the extensive work done by law student interns at CCR. Second, Plaintiffs have declined to seek reimbursement in costs for research and copying, seeking only the costs due for filing the cross-appeal and for printing and filing the opposition to certiorari to the Supreme Court from GEO. Third, to pre-empt concerns about duplication of efforts where multiple attorneys worked on a submission, Plaintiffs have applied an across-the-board 10% discount to the total fee amount sought for attorneys and paralegals, and a 25% discount to the fees sought for the work of law students.

### C.  Total Fees Incurred

In keeping with the "presumptively reasonable fee" approach, Plaintiffs calculated the total fees due in this action by multiplying the number of hours each attorney expended by the hourly rate for that attorney. *See Arbor Hill*, 522 F.3d at 190; Schwarz Decl. Exhibit 4 (individual time records of each attorney, paralegal, and student).

As detailed in Schwarz Decl. Exhibit 2 (summary of fees incurred and discounts applied), and Schwarz Decl. Exhibits 3 and 4 (individual time records), Plaintiffs incurred $376,370 in fees in the appellate and Supreme Court proceedings that should be compensated by either the Government or the Defendant-Intervenors. Exhibit 2 provides a summary of fees incurred in

challenging the appeal by both Defendant-Intervenors ($225,607), and fees incurred in challenging GEO's motion to stay the Second Circuit mandate and petition for *certiorari* ($150,763). After the discounts applied, this brings bringing the total fee demand to $330,186. Schwarz Decl. Exhibit 2.

### D.  Total Costs Incurred

Plaintiffs are also entitled to recover costs pursuant to the FOIA, analogous civil rights fee-shifting statute Section 1988, and Fed R. Civ. P. 54 (d). *See* 5 U.S.C. § 552(a)(4)(E); *Pietrangelo*, 586 F.3d at 343 (awarding recovery of costs incurred during a FOIA action); 42 U.S.C. § 1988 (b). Plaintiffs incurred total costs in the amount of $1572.72 in printing and filing costs of their opposition to the GEO Group's petition for certiorari. Schwarz Decl. Exhibit 6. They are entitled to recover that full amount.

## CONCLUSION

Plaintiffs are entitled to a fee award for their successful work winning judgments ordering transparency in government detention contracting and stopping for-profit private detention contractors from undermining the most basic principles of the FOIA. The purpose of FOIA is "to facilitate transparency about the government's policies even — or perhaps especially — when members of the public are disturbed by those policies and are fighting to end them." *Nat'l Day Laborer Org. Network v. ICE*, 877 F.Supp. 2d 87, 93 (S.D.N.Y. 2012). In a time of increasing private control over detention and incarceration, the need for transparency and accountability for government contracting decisions is all the more important. Declining to award attorneys' fees for the appellate portions of this case would give the Government a perverse incentive to encourage private contractors to take on fruitless appeals unsupported by established law in the Government's stead, and would present private entities with the

opportunity to delay implementation of a legitimate court order at minimal cost to themselves. Such a result would displace the cost of litigation on the public interest plaintiffs least able to absorb them. The intent and plain reading of FOIA's fee-shifting provision does not permit such a result.

The fees Plaintiffs have sought are reasonable, and the Court should order Defendants to compensate Plaintiffs for the full cost of litigation in this case. In the alternative, the Court should order Defendants to compensate Plaintiffs for fees and costs incurred in the district court, and order Defendant-Intervenors to compensate Plaintiffs for fees and costs incurred in the Second Circuit and Supreme Court. Plaintiffs are entitled to their full award.

Dated: March 2, 2018

Respectfully submitted,

_____

GHITA SCHWARZ
OMAR FARAH
BRITNEY WILSON
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6445
Fax:  (212) 614-6422
gschwarz@ccrjustice.org

JENNY-BROOKE CONDON
Center for Social Justice
Seton Hall Law School
833 McCarter Highway
Newark, New Jersey 07102
(973) 642-8700
Jenny-Brooke.Condon@shu.edu